UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>    Northeast Biofuels, LP et al.,<br><br>                      Debtors. | Case No. 09-30057-5-mcr<br>Chapter 11 (Main Case)<br>Case No. 09-30058-5-mcr<br>Case No. 09-30059-5-mcr |
| Lurgi, Inc.,<br><br>                      Plaintiff,<br>v.<br><br>Northeast Biofuels, LP,<br>BNP Paribas and<br>Wilmington Trust, FSB, as Administrative,<br><br>                      Defendants. | Adv. Proc. No. 09-50012-mcr |

Appearances:

| | |
|---|---|
| Harris Beach, LLP<br>Attorneys for Lurgi, Inc.<br>One Park Place, 4th Floor<br>300 South State Street<br>Syracuse, NY 13202 | Wendy A. Kinsella, Esq.<br>David M. Capriotti, Esq. |
| Stoel Rives, LLP<br>Attorneys for Lurgi, Inc.<br>600 University Street, Suite 3600<br>Seattle, WA 98101 | Angela M. Niemann, Esq. |
| Arent Fox, LLP<br>Attorneys for Northeast Biofuels, LP<br>1675 Broadway<br>New York, NY 10019 | Mark Bloom, Esq.<br>Eugene Scheiman, Esq. |
| Menter, Rudin & Trivelpiece, PC<br>Attorneys for Northeast Biofuels, LP<br>308 Maltbie Street, Suite 200<br>Syracuse, NY 13204 | Jeffrey A. Dove, Esq. |

| | |
|---|---|
| Hiscock & Barclay, LLP<br>Attorneys for Wilmington Trust, FSB<br>One Park Place<br>300 South State Street<br>Syracuse, NY 13202 | J. Eric Charlton, Esq. |
| Seward & Kissel, LLP<br>Attorneys for Wilmington Trust, FSB<br>One Battery Park Plaza<br>New York, NY 10004 | Laurie R. Binder, Esq. |
| Bond, Schoeneck & King, PLLC<br>Attorneys for Official Committee of Unsecured Creditors<br>One Lincoln Center<br>Syracuse, NY 13202 | Stephen A. Donato, Esq. |

Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Before the court is a motion for a preliminary injunction filed by Lurgi, Inc. ("Lurgi"), seeking to enjoin Northeast Biofuels, LP ("Debtor") and BNP Paribas ("Paribas") from taking any action to draw down on an irrevocable standby letter of credit ("Letter of Credit"). The Letter of Credit was issued by Paribas on behalf of Lurgi, its customer, for the benefit of the Debtor pursuant to an underlying Engineering, Procurement and Construction Agreement between Lurgi and the Debtor dated June 29, 2006 ("EPC Agreement"). If the preliminary injunction is denied, Lurgi seeks an order requiring the Debtor to segregate and escrow the Letter of Credit proceeds and declaring that the security interest of Wilmington Trust, FSB ("Wilmington Trust") does not attach to the proceeds.[1] Alternatively, Lurgi seeks the allowance of super-priority or general administrative expense claims in its favor to the extent of amounts drawn down on the Letter of Credit. The court has core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2). This memorandum-decision incorporates the court's findings

---

[1] Wilmington Trust serves as Collateral Agent in reference to a secured revolving credit and term loan facility that provided financing for the Debtor's acquisition, development and construction of an ethanol plant in Fulton, NY. In that capacity, Wilmington Trust holds a first secured position against all of the Debtor's personal property interests.

2

of fact and conclusions of law as required by Fed. R. Bankr. P. 7052. For the following reasons, Lurgi's requested relief is denied.

## BACKGROUND

On June 29, 2006, the Debtor entered into the EPC Agreement for the development and construction by Lurgi of a 100 million-gallon-per-year ethanol plant in Fulton, New York. In addition to ethanol, the plant was expected at full operation to generate 367,000 tons of distiller grains, 326,000 tons of $CO^2$ and 10 million gallons per year of crude corn oil—all with anticipated markets projected to generate a considerable revenue stream. The Debtor financed the purchase, development and construction of the plant through a secured loan facility executed by and among Harris, NA, as Collateral Agent and Depositary Bank, Goldman Sachs Credit Partners, LP as Administrative Agent, and Calyon New York Bank as Construction Agent.[2] In connection with the facility, the Debtor granted to Harris, NA, a first security interest in the Debtor's right, title and interest in all personal property of the Debtor, which includes all accounts and Letter of Credit rights and monies. At the time of filing its petition, the Debtor owed approximately $160 million in connection with the outstanding secured loan facility.

Under Article 3.3 of the EPC Agreement providing for progress payments, the Debtor could withhold from Lurgi an amount equal to 10% of the progress payments due from the Debtor as payment retainage unless Lurgi, at its option, posted an irrevocable standby letter of credit in a stated amount not less than the amount that the Debtor would have been entitled to retain as payment retainage had Lurgi not delivered such letter of credit. (EPC Agreement Art. 3.3(c).) Lurgi elected to post the Letter of Credit on October 12, 2007, which was subsequently amended (and increased) four times. Article 2.2 of the EPC Agreement provides for the right of the Debtor to present any such letter of credit for payment when Lurgi breached its obligations

---

[2] Wilmington Trust is the successor to Harris, NA, as Collateral Agent.

3

under the EPC Agreement, provided that, in the event of breach, the Debtor would only be entitled to draw on the Letter of Credit the amount then due to the Debtor. Article 18 of the EPC Agreement provides that if a dispute arising out of the EPC Agreement is not resolved by mutual consultation, then the dispute shall be submitted to arbitration.

The plant's original cost under the EPC Agreement was $121,110,013, which was increased by approved change orders to $125 million. In October 2008, Lurgi billed another $22 million in change orders, which are disputed. The plant has yet to reach full operational status. "Interim Completion" of the plant, in which the facility can produce ethanol over a 72-hour period at 75% of the targeted production rate, was declared in August 2008, approximately eight months later than originally projected. Shortly thereafter, in September 2008, the plant had to be shut down due to flaws and failures that have yet to be addressed. The Debtor served a Notice of Default to Lurgi under the contract by letter dated December 8, 2008. Lurgi responded with an arbitration demand and filed a mechanics' lien against the project in the amount of $22 million. The Debtor responded to the arbitration demand and asserts claims of $65 million against Lurgi.

On January 15, 2009, the Debtor and affiliates filed for bankruptcy relief under chapter 11. The Debtor has been unable to obtain outside sources of financing to proceed to completion of construction. The Debtor is now at a critical juncture in its chapter 11 proceeding and intends to sell its ethanol facility at public auction, which has been noticed for hearing before this court.

On March 5, 2009, Lurgi commenced the present adversary proceeding and presented for the court's consideration an Application For Order to Show Cause and Temporary Restraining Order. The request was triggered by the Debtor's service on March 4, 2009, of a three-day notice of its intent to draw upon the Letter of Credit. The court held a telephonic hearing among the parties upon receipt of Lurgi's papers on March 5, 2009. Based upon a voluntary standstill

agreement under which the Debtor agreed that it would not act to draw down the letter of credit until further hearing and a decision by this court, the court did not enter the temporary restraining order, but instead set a hearing for March 16, 2009, on the request for a preliminary injunction. Lurgi supports its requested relief by the declaration of counsel, Wendy Kinsella, Esq., and the declaration of senior manager of commercial project management for Lurgi, Sharon Bell. Filed in opposition to the relief requested are the declarations of Eugene Sheiman, Esq., counsel for the Debtor, Brian Roach, President and Chief Operating Officer of the Debtor, and Michael Hadley, Chief Financial Officer of the Debtor. Wilmington Trust, as Collateral Agent, and the Official Committee of Unsecured Creditors have separately objected to Lurgi's request and entitlement to the relief sought.

## DISCUSSION

A court may issue a preliminary injunction only upon a showing by the movant that it will suffer irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation with a balance of hardships tipping decidedly in the movant's favor. Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999) (citing Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 33 (2d Cir. 1995)).

Letters of credit are generally designed to substitute for and support an obligation to pay, and involve three separate, but related, contracts—here, the EPC Agreement between Lurgi and the Debtor, the agreement between Paribas and its customer Lurgi, by which Paribas agreed to issue the Letter of Credit, and the Letter of Credit itself, which is Paribas' commitment to pay the Debtor upon compliance with the terms and conditions specified in the Letter of Credit. See All Serv. Exportacao, Importacao Comercio, S.A. v. Banco Bamerindus Do Brazil, S.A., 921 F.2d

5

32, 34 (2d Cir. 1990); see also First Commercial Bank v. Gotham Originals, Inc., 64 N.Y. 2d 287, 294 (N.Y. 1985). As a matter of law, a bank's obligation under a letter of credit is totally independent of the underlying transaction. KMW Int'l v. Chase Manhattan Bank, N.A., 606 F.2d 10, 15 (2d Cir. 1979).

Although courts should rarely interfere with executory letter-of-credit transactions, a court may enjoin payment in narrow circumstances where fraud has been shown. Brenntag, 175 F.3d at 250 (citing KMW, 606 F.2d at 16; United Bank Ltd. v. Cambridge Sporting Goods Corp., 360 N.E.2d 943, 948 (2d Cir 1976); Sztejn v. J. Henry Schroder Banking Corp., 177 Misc. 719, 721 (N.Y. 1976)). A cause of action based upon fraud must be pled with specificity. Fed. R. Civ. P. 9, as incorporated by Fed. R. Bankr. P. 7009. Here, Lurgi alleges that it is entitled to injunctive relief on the grounds that any draw down: 1) would violate the EPC Agreement between Lurgi and the Debtor, 2) would be outside the ordinary course of the Debtor's business without court approval required by Code section 363; and 3) would be unauthorized post-petition financing under Code section 364.[3] (Pl.'s Application ¶ 6; Pl.'s Am. Mem. Supp. at 9 and 11.) Although Lurgi states that the Debtor's conduct is "possibly fraudulent" (Pl.'s Am. Mem. Supp. at 2) and "may constitute fraud, authorizing injunctive relief" (Pl.'s Am. Compl. ¶ 38), Lurgi fails to make any specific allegation of fraud that could serve as a basis for injunctive relief.

Lurgi argues that the above fraud analysis is not at issue in this matter and draws a distinction between "the factual setting of a pending draw certificate to an issuing bank and the corresponding obligation by the bank to honor the letter of credit" and the instant motion to enjoin the Debtor from presenting a draw certificate under the Letter of Credit. (Pl.'s Reply Mem. Supp. at 3.) Putting aside the fact that the issuing bank is a named defendant in this matter, Lurgi's interpretation is not supported by the law. The same principles apply regardless

---

[3] The term "Code" refers to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2008).

6

of whether a movant attempts to achieve the same legal outcome by injunction against presentation or against payment. See Ground Air Transfer, Inc. v. Westates Airlines, Inc., 899 F.2d 1269, 1273 (1st Cir. 1990) ("Courts have also proved about as reluctant to issue injunctions against beneficiaries calling, as against issuers paying, letters of credit.") (collecting cases). Courts have analyzed the likelihood of succeeding in demonstrating fraud in cases where the movant sought to enjoin a beneficiary from taking action to draw upon a letter of credit, and have not drawn a distinction between injunctions against a beneficiary and those against an issuing bank. See Lenox Hill Hosp. v. Am. Int'l Group, Inc., 2008 N.Y. Slip Op. 52154U (N.Y. Sup. Ct. Oct. 20, 2008) (denying request for preliminary injunction enjoining two beneficiaries from submitting a draft against a letter of credit, requiring one beneficiary to withdraw its present draft demand, and enjoining the issuing bank from honoring any draft, on the ground that the movant failed to show that it was more likely than not to succeed in demonstrating fraud); see also Universal Marine Ins. Co., Ltd. v. Beacon Ins. Co., 577 F.Supp. 829 (W.D.N.C. 1984) (denying request for preliminary injunction enjoining beneficiary from taking any action to draw upon a letter of credit as the movant failed to prove that the harm to it outweighed the harm to the beneficiary, and thus finding it unnecessary to determine whether fraud existed in the underlying transaction).

Lurgi frames the issue in this matter as being whether the Debtor has a right under the underlying EPC Agreement to the proceeds of the Letter of Credit and cites Choctaw Generation LP v. Am. Home Assurance Co., 271 F.3d 403 (2d Cir. 2001) and Sperry Int'l Trade, Inc. v. Gov't of Israel, 689 F.2d 301 (2d Cir. 1982) ("Sperry II") in support of its proposition that, "if there is a dispute between the parties regarding the terms of a letter of credit in a contract with an arbitration provision," such as Article 18 of the underlying EPC Agreement, then "the dispute is

subject to arbitration consistent with the parties' intent" and "[t]he law on letters of credit is inapplicable." (Pl.'s Reply Mem. Supp. at 3.)

However, Lurgi's cited cases do not support its argument that letter of credit law does not apply. Choctaw did not involve a movant attempting to enjoin another party from drawing down a letter of credit, and is thus inapplicable to the question of whether letter of credit law applies to a preliminary injunction analysis. Rather, the dispute in Choctaw concerned the duty of a surety to replenish a letter of credit maintained under a construction contract, and whether the surety could enforce the arbitration provision of the construction contract against the beneficiary, despite not being a signatory to the construction contract and there being no arbitration provision in the surety contract. Choctaw, 271 F.3d at 403–05. Further, the movant in Sperry II had previously asserted a claim of fraud in the underlying transaction as the basis of its request for a preliminary injunction, which was granted by the district court and then reversed by the Second Circuit on the ground that the movant failed to provide sufficient proof of irreparable harm. Sperry Int'l Trade, Inc. v. Gov't of Israel, 670 F.2d 8, 9–10 (2d Cir. 1982) ("Sperry I"). Although the Second Circuit in Sperry II later upheld an arbitration panel decision to segregate and escrow letter of credit proceeds, this holding was not based on any determination with respect to the applicability of the fraud requirement in the original preliminary injunction analysis.

For the reasons stated above, Lurgi has not carried its burden of demonstrating that it is likely to prevail on the issue of whether the Debtor's right to draw down on the Letter of Credit is subject to arbitration, nor on any fraud claim, which it has failed to specifically allege.[4] Further, there is no support for Lurgi's position that the draw down is outside the ordinary course

---

[4] The court recognizes that the merits of any underlying dispute are ultimately to be determined in arbitration. To the extent, however, that Lurgi needed to establish its likelihood of succeeding in that forum in order to obtain a preliminary injunction from this court, the record is devoid of any such proof.

8

of the Debtor's business or constitutes post-petition financing. As a debtor in possession, the Debtor had full authority to proceed in in the ordinary course of business in the exercise of any of its rights under an existing contract. This includes its rights as a beneficiary under the issued Letter of Credit. The court equally rejects Lurgi's argument that the draw down is a veiled attempt at post-petition financing under Code section 364, as this is not "the obtaining of credit or the incurring of debt." 11 U.S.C. § 364(c). Finally, Lurgi has also failed to demonstrate in the balance of any respective hardships that it would be more greatly harmed than would the insolvent Debtor in this chapter 11 case. For the foregoing reasons, Lurgi's request for a preliminary injunction enjoining the Debtor and Paribas from taking any action to draw down on the Letter of Credit is denied.

The court next considers the three alternative forms of relief sought by Lurgi. First, Lurgi seeks an order requiring that the Debtor segregate and escrow the Letter of Credit proceeds. As noted above, the same letter of credit principles apply regardless of whether an applicant attempts to prevent a draw down directly through an injunction or indirectly through "similar relief" such as attachment. See N.Y. U.C.C. § 5-109, Official Comment No. 5 ("Although the statute deals principally with injunctions against honor, it also cautions against granting "similar relief" and the same principles apply when the applicant or issuer attempts to achieve the same legal outcome by injunction against presentation ..., interpleader, declaratory judgment, or attachment." (citing Ground Air Transfer, 899 F.2d 1269).[5] Lurgi may not indirectly prevent the Debtor from drawing down on the Letter of Credit by segregating and

---

[5] The Letter of Credit is "subject to the Uniform Customs and Practice for Documentary Credits (2007 Revision) International Chamber of Commerce Publication No. 600, and to the extent not inconsistent therewith shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of laws." (Letter of Credit at 2.) Where there is no conflict between the revised Article 5 of the N.Y. U.C.C. and the U.C.P, both apply. Burton V. McCullough, 1-1 Letters of Credit § 1.06 (2009). The U.C.P. contains no conflicting provisions governing fraud, and thus the revised Article 5 of the N.Y. U.C.C. applies.

9

escrowing the Letter of Credit proceeds when Lurgi cannot do so directly. Accordingly, Lurgi's request is denied. Second, Lurgi seeks an order declaring that the security interest of Wilmington Trust does not attach to the Letter of Credit proceeds. Lurgi cites no legal authority for the court's interference with Wilmington Trust's valid state contract rights. Accordingly, this request is also denied. Third, Lurgi seeks recognition of a super-priority unsecured administrative expense claim under Code section 364 or a general administrative expense claim under Code section 503(b). Since Code section 364 is not implicated, as noted previously, there is no basis for a super-priority administrative expense claim, nor has Lurgi established the basis for an administrative expense claim under Code section 503(b). See Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98, 101 (2d Cir. 1986) ("[A]n expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession, and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the [debtor in possession] in the operation of the business."). Accordingly, Lurgi's request is denied.

     So ordered.

Dated: March 21, 2009
      Syracuse, New York

                                      Hon. Margaret Cangilos-Ruiz
                                      U.S. Bankruptcy Judge